UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEE KARIM,<br><br>           Plaintiff,<br><br>   v.<br><br>BEST BUY CO., INC., et al.,<br><br>           Defendants. | Case No. 22-cv-04909-JST<br><br>**ORDER GRANTING MOTION TO COMPEL ARBITRATION AND STAY LITIGATION**<br><br>Re: ECF No. 20 |

Before the Court is Defendants' Best Buy Co., Inc.'s and BestBuy.com's (collectively, "Best Buy") motion to compel arbitration and stay litigation. ECF No. 20. The Court will grant the motion.

I.      **BACKGROUND**

Plaintiff Alee Karim is a customer of Best Buy, a consumer electronic retailer. ECF No. 12 ¶¶ 1, 8. Karim purchased a television set from Best Buy on February 22, 2020. ECF No. 20-3 ¶ 6. To complete the process and place an order, Karim and other Best Buy customers were prompted to click a button. *See* ECF No. 20-1 at 5. Directly above the button was a hyperlinked statement in blue text that stated, "By placing your order, you agree to our BestBuy.com Terms and Conditions." *Id*. The link to the Terms and Conditions ("T&C") also appeared at the bottom of the webpage. *Id*. Karim and other Best Buy customers were not required to view the T&C to complete the order. *See id.* at 5.

The "Disputes" Section of the T&C contains an arbitration agreement. ECF No. 20-2 at 16. The agreement provides, in relevant part:

> You and Best Buy each agree that, except as otherwise noted below, any dispute or claim arising out of or relating in any way to these Terms, or to any products or services sold or distributed by Best

> Buy, whether in store, in your home, over the phone, or online, including, but not limited to, the advertising of or sales practices relating to such products and services, delivery, installation, and any communication, by whatever means, between you and Best Buy, will be resolved by binding, individual arbitration, rather than in court.

*Id*. The agreement also provides that the arbitration will be conducted by the American Arbitration Association ("AAA"). *Id*. at 9.

After completing the purchase, Karim was notified that he was enrolled in a "Best Buy Total Tech Support Monthly Membership." ECF No. 20-4 ¶ 4. The auto-renewing subscription cost $19.99 a month. *Id.* Karim alleges that he did not request the software or intend to purchase it. ECF No. 12 ¶ 17.

Karim alleges that Best Buy unlawfully charged unsuspecting California consumers recurring fees for subscription services after they made a purchase on Best Buy's website. *Id.* ¶¶ 8–9. On July 12, 2022, Karim filed a complaint on behalf of himself and a class of California consumers who were charged subscription fees in connection with purchases made on Best Buy's website. ECF No. 1 ¶ 1. Karim brings claims under California Unfair Renewal Laws, California Unfair Competition Laws, and the California Consumers Legal Remedies Act. ECF No. 12 ¶¶ 43–76. He seeks damages, injunctive relief, and attorney's fees and costs. *Id*. at 17.

On December 1, 2022, Best Buy filed the instant motion, ECF No. 20.[1] Karim filed an opposition, ECF No. 29, and Best Buy replied, ECF No. 30. The Court took the motion under submission without a hearing on January 9, 2023. ECF No. 31.

## II.   JURISDICTION

The Court has jurisdiction pursuant to 28 U.S.C. § 1332(d). *See* ECF No. 1 at 3.

## III.   LEGAL STANDARD

The Federal Arbitration Act ("FAA") applies to arbitration agreements in any contract affecting interstate commerce. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); 9

---

[1] Best Buy requests that the Court take judicial notice of a copy of the American Arbitration Association's Consumer Arbitration Rules, as well as court filings in other cases in this district. Karim does not respond to the request. The Court grants the request and takes judicial notice of the existence of these materials, but not for the truth or accuracy of the statements therein. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001).

2

U.S.C. § 2. Under the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision reflects "both a liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted).

On a motion to compel arbitration, the Court's role under the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If the court is "satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. Where the claims alleged in a complaint are subject to arbitration, the Court may stay the action pending arbitration. *Id*. § 3.

"[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 91 (2000).

## IV.   DISCUSSION

Karim argues that the parties never entered into a valid, binding contract because Best Buy failed to provide reasonable notice of the T&C. ECF No. 29 at 5-6. He further argues that the Court, and not an arbitrator, must determine whether the dispute at hand is arbitrable. *Id*. at 8. Best Buy contends that a valid contract exists and that the AAA rules require that the arbitrator, not the Court, decide whether there is a valid agreement to arbitrate and whether the dispute should be delegated to arbitration. ECF No. 20 at 12, 16.

### A.   Contract Formation

While challenges to the validity of a contract containing an arbitration clause are decided by the arbitrator, "challenges to the very existence of the contract are, in general, properly directed to the court." *Kum Tat Ltd. v. Linden Ox Pasture, LLC*, 845 F.3d 979, 983 (9th Cir. 2017). This is because "arbitration is a matter of contract and a party cannot be required to submit any dispute which [it] has not agreed so to submit." *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475

3

U.S. 643, 648 (1986) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)).

As a preliminary matter, the parties dispute whether Minnesota or California law applies to the question of contract formation. "But whether the choice of law provision applies depends on whether the parties agreed to be bound by [the contract] in the first place." *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014). The Court "need not engage in this circular inquiry because both California and [Minnesota] law" follow the objective theory of contract formation. *Id.*; *see Adibzadeh v. Best Buy, Co. Inc.*, No. 20-cv-06257-JSW, 2021 WL 4440313, at *4 (N.D. Cal. Mar. 2, 2021) ("In California, the forum state, and Minnesota, the state identified in the My Best Buy® Terms choice-of-law provision, courts follow the objective theory of contract formation."). Under this theory, the parties must mutually manifest their assent to the terms of the agreement. *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4th 832, 850 (1999) ("To form a contract, a manifestation of mutual assent is necessary."); *Crince v. Kulzer*, 498 N.W.2d 55, 57 (Minn. Ct. App. 1993) ("Mutual assent of the parties is essential for formation of a contract."). "[T]he conduct of a party is not effective as a manifestation of [its] assent unless [it] intends to engage in the conduct and knows or has reason to know that the other party may infer from [its] conduct that [it] assents." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (quoting Restatement (Second) of Contracts § 19(2) (1981)).

In view of this principle, "an enforceable agreement may be found where '(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.'" *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir. 2023) (quoting *Berman*, 30 F.4th at 856).[2] In conducting this inquiry, courts consider

---

[2] Karim characterizes the contract at issue as a "sign-in wrap" agreement, while Best Buy characterizes it as "essentially a clickwrap agreement." *See* ECF No. 29 at 12; ECF No. 20 at 18-19. The Ninth Circuit has distinguished between two forms of online contracts: (1) "clickwrap" agreements, "in which website users are required to click on an 'I agree' box after being presented with a list of terms and conditions of use," which courts generally enforce, and (2) "browsewrap" agreements, "where a website's terms and conditions are generally posted on the website via a hyperlink at the bottom of the screen," which courts view with skepticism. *Berman*, 30 F.4th at 856. A third category of agreement has become known as a "sign-in wrap," in which a website

"the design and content of the website and the agreement's webpage." *Nguyen*, 763 F.3d at 1177. Because Best Buy does not attempt to show that Karim had actual knowledge of the T&C, the Court will consider whether Best Buy's website put Karim on inquiry notice of the T&C and its terms.

### 1. Reasonably Conspicuous Notice

For notice to be reasonably conspicuous, it "must be displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it." *Oberstein*, 2023 WL 1954688, at *7 (quoting *Berman*, 30 F.4th at 856). If there is a hyperlink, "the fact that a hyperlink is present must be readily apparent," such that a user would not have to click on every word of the sentence to "ferret out hyperlinks." *Berman*, 30 F.4th at 857; *Nguyen*, 763 F.3d at 1179.

Karim argues that the notice was not reasonably conspicuous because the text informing him that completing his purchase would constitute agreement to the terms was "extremely small" and in "grey undifferentiated print." ECF No. 29 at 12-13. Karim also contends that the numerous hyperlinks on the page and the "eye-catching" yellow "Place Your Order" box further distracts the customer from the textual notice. *Id*. Best Buy argues that the blue hyperlink and the dark print on the white background is "clearly visible," "easy to read," and "in close visual proximity" to the "Place Your Order" button. ECF No. 20 at 19.

On Best Buy's webpage, the notice text is located directly above a yellow button that reads "Place Your Order" in a comparatively smaller font than the text of the button. *See* ECF No. 20-1 at 5. Despite Karim's characterization of the font as "grey undifferentiated print," the dark text contrasts clearly with the white background and is plainly readable. ECF No. 29 at 13; *see id.*

---

"notif[ies] the user of the existence of the website's terms of use and, instead of providing an 'I agree' button, advise[s] the user that he or she is agreeing to the terms of service when registering or signing up." *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 75-76 (2d Cir. 2017); *see also Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 763 (N.D. Cal. 2019). The Court need not resolve this discrepancy because, as the Ninth Circuit has clarified, so long as the website "provide[s] sufficient notice for constructive assent . . . there [i]s a binding arbitration agreement." *Lee v. Ticketmaster, LLC*, 817 F. App'x 393, 394 (9th Cir. 2020) (compelling arbitration based on a notice provided above a "Place Order" button); *see also Oberstein*, 60 F.4th at 515 (holding that the T&Cs afforded users sufficient notice even though the textual notices "lie somewhere in between" clickwrap and browsewrap).

5

Likewise, the hyperlinks are in blue with no other emphasis, indicating that they are active hyperlinks that the consumer could click to be directed to the T&C. *See* ECF No. 20-1 at 5.

Courts have consistently held notices like that on the Best Buy website to be reasonably conspicuous. For example, in *Oberstein*, the Ninth Circuit held that Ticketmaster's and Live Nation's textual notices were "displayed directly above or below the action button" and thus provided sufficient notice of its T&C. 2023 WL 1954688 at *7. In reaching that holding, the Ninth Circuit emphasized the proximity of the textual notice to the action button as well as the fact that it was visibly hyperlinked in "bright blue font." *Id*. at *8. While the Ninth Circuit recognized that the plaintiffs encountered the textual notice on three separate occasions, the Ninth Circuit based its holding on the placement of the notice on the webpage. *See id*.

Likewise, in *Meyer v. Uber Technologies, Inc*., 868 F.3d 66, 78 (2d Cir. 2017), the Second Circuit held that Uber's registration process afforded users sufficient notice of its terms and conditions was "reasonable as a matter of California law" because the screen was "uncluttered," the text "appear[ed] directly below the buttons for registration," and "[t]he entire screen [wa]s visible at once" such that the user did "not need to scroll beyond what [wa]s immediately visible to find notice of the Terms of Service." Though the text was "in small font," the Second Circuit reasoned, "the dark print contrast[ed] with the bright white background, and the hyperlinks [we]re in blue and underlined." *Id*.

Similarly, in *DeVries v. Experian Information Solutions, Inc.*, No. 16-cv-02953-WHO, 2017 WL 733906, at *2 (N.D. Cal. Feb. 24, 2017), the court evaluated whether a textual notice above a yellow "Submit Secure Order" afforded users sufficient notice of its T&C. Text on the bright yellow button was capitalized in large font, while the notice was in comparatively smaller text directly above the button. *See id*. The T&C hyperlink was blue without capitalization or underline. *See id*. The court held that the notice's "proximity to the 'Submit Secure Order' button and font size adequately called a reasonably prudent user's attention" to the T&C. *Id*. at *7.

And in *Peter v. Doordash Inc.*, 445 F. Supp. 3d 580, 582 (N.D. Cal. 2020), this Court held that the plaintiffs were on inquiry notice where, "[t]o complete the process and place an order" using the Doordash platform, the plaintiffs "clicked a 'Sign Up' button," and "[d]irectly below

6

1  that button was a statement reading: 'By tapping Sign Up . . . you agree to our Terms and
2  Conditions and Privacy Statement.'" Further, "[t]he words 'Terms and Conditions' appeared in
3  blue text and were hyperlinked to the DoorDash Terms and Conditions in effect at the time." *Id.*
4  This Court noted that the screen was "uncluttered and wholly visible" and emphasized the
5  proximity of the notice text to the sign-up button. *Id.* at 586; *see also Adibzadeh*, 2021 WL
6  4440313 at *4 (holding that a similar Best Buy notice below a "Sign In" button with blue
7  hyperlinks and no other emphasis was reasonably conspicuous).
8        Karim's arguments to the contrary are without merit. Karim relies heavily on *Sellers v.*
9  *JustAnswer LLC*, 73 Cal. App. 5th 444, 477 (2021). In that case, the notice of contractual terms
10 "appear[ed] in extremely small print, outside the white box containing the payment fields where
11 the consumer's attention would necessarily be focused," and "[a]lthough the text of the notice
12 appear[ed] in white against a dark background, the font [was] so small that the contrast [was] not
13 sufficient to make the text apparent." *Sellers*, 73 Cal. App. 5th at 480–81 (footnotes omitted).
14 "Further, the hyperlink to the terms of service [was] underlined, but it [was] not set apart in any
15 other way that may [have] draw[n] the attention of the consumer, such as with blue text or capital
16 letters." *Id.* at 481. As described above, the T&C in this case were displayed more conspicuously
17 than those in *Sellers*. *Sellers* also applied California law.
18       While Karim stresses that he intended only to make a one-time purchase, courts have
19 consistently held that hyperlinks above buttons for making one-time purchases have provided
20 sufficiently conspicuous notice. *See, e.g.*, *Allen v. Shutterfly, Inc.*, No. 20-cv-02448-BLF, 2020
21 WL 5517172, at *6–7 (N.D. Cal. Sept. 14, 2020) (compelling arbitration where a customer was
22 presented with a T&C hyperlink placed above a "Submit Payment" button when purchasing
23 school portraits). And although Karim also contends that the multiple hyperlinks on Best Buy's
24 webpage distract the user, the hyperlinks at issue contrast starkly with the hyperlinks that courts
25 have found to be insufficient to put a purchaser on notice. *See e.g., Colgate v. JUUL Labs, Inc.*,
26 402 F. Supp. 3d 728, 763 (N.D. Cal. 2019) (holding that a webpage with two hyperlinks did not
27 provide sufficient notice where the first non-T&C hyperlink was bolded, underlined, and in a
28 larger font than a blue T&C hyperlink that contained no other emphasis).

1         The Court therefore concludes that the Best Buy webpage provided reasonably conspicuous notice of the T&C.

### 2. Unambiguous Manifestation of Assent

"A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Oberstein*, 60 F.4th at 515 (quoting *Berman*, 30 F.4th at 857). "[A]ll that is required" is that the text of the notice "explicitly alert the user that by . . . proceeding to the next page, the user 'agrees to our Terms of Use.'" *Id.*

Karim asserts that he intended to make a one-time product purchase, rather than establish an on-going relationship, making him less likely to expect that clicking the "Place Your Order" button would bind him to T&C for a "continuing services relationship." *See* ECF No. 29 at 14. Best Buy argues that the language of the notice clearly warned Karim that, by pressing the "Place Your Order" button, he was assenting to the T&C. *See* ECF No. 20 at 19–20.

Best Buy's notice explicitly informs customers of the legal significance of purchasing an item on its website. *See* ECF No. 20-1 at 5. It states, "By placing an order, you agree to our BestBuy.com Terms and Conditions," which indicates to customers that pushing the button will bind them to Best Buy's T&C. *See id*. This case is distinguishable from *Berman*, in which a webpage stating "I understand and agree to the Terms & Conditions" did not provide unambiguous manifestation of assent because it did not indicate to the user that clicking the "continue" button constituted assent to those terms. *See* 30 F.4th at 858. Best Buy's notice is more akin to the notice considered in *Meyer*, where the Second Circuit held that users unambiguously manifested assent because the text stated, "By creating an Uber account, you agree to the TERMS OF SERVICE AND PRIVACY POLICY." *Meyer*, 868 F.3d at 78–80.

Because Best Buy's notice explicitly stated that clicking the "Place Your Order" button constituted an agreement, the Court concludes that Karim unambiguously manifested his assent to the T&C. The Court therefore holds that Karim was on inquiry notice of the T&C and he is thus bound by its terms. The parties otherwise stipulate that the contract delegates the gateway question of arbitrability to the arbitrator. *See* ECF No. 29 at 18; ECF No. 30 at 19. Accordingly,

the Court will compel arbitration.

B.  **Stay of Proceedings**

Karim asks the Court to stay proceedings, while Best Buy argues that dismissal is appropriate. The Court will stay the proceedings because the Ninth Circuit has expressed a "preference for staying an action pending arbitration rather than dismissing it." *See MediVas, LLC v. Marubeni Corp.*, 741 F.3d 4, 9 (9th Cir. 2014). Contrary to Best Buy's suggestion, the Court has not determined that "all of the claims raised in the action are subject to arbitration." *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073–74 (9th Cir. 2014). Rather, the Court has determined only that a contract existed and that, pursuant to the parties' stipulation, the T&C delegates the question as to the arbitrability to the arbitrator. Accordingly, "staying the original action" would not be "useless" in this situation. *MediVas*, 741 F.3d at 9 n.4.

## CONCLUSION

For the foregoing reasons, the Court grants Best Buy's motion to compel arbitration and stays the proceedings. The Clerk shall administratively close the file. This order shall not be considered a dismissal or disposition of this action against any party. If further proceedings become necessary, any party may initiate them in the same manner as if this order had not been entered.

**IT IS SO ORDERED.**

Dated: June 2, 2023

_____
JON S. TIGAR
United States District Judge